## CA No. 16-72275

District Court No. 2:16-CR-00046-GMN-PAL-1

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————

CLIVEN D. BUNDY,

Petitioner,

v.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,

Respondent.

———————

## RESPONSE FROM THE UNITED STATES
## (PLAINTIFF–REAL PARTY IN INTEREST)

———————

DANIEL G. BOGDEN
United States Attorney

ELIZABETH O. WHITE
Appellate Chief and
Assistant U.S. Attorney
District of Nevada
100 W. Liberty, Suite 600
Reno, Nevada 89501
(775) 784-5438
*Attorneys for Plaintiff-Real
Party in Interest*

Date submitted: October 14, 2016

# TABLE OF CONTENTS

<u>Page</u>

Table of Authorities .................................................................... ii

I.    Introduction ..................................................................... 1

II.   Issue Presented ................................................................ 2

III.  Statement of the Relevant Facts ..................................... 2

      A.    The Court Denies Without Prejudice Klayman's Initial *Pro Hac Vice* Petition ........................................................ 2

      B.    The Court Denies Klayman's Request for Reconsideration ... 6

      C.    Other Relevant Actions in the District Court.  ..................... 8

IV.   Mandamus Standard of Review ..................................... 12

V.    Government's Response ................................................. 13

      A.    Standard of Review. ............................................... 13

      B.    A Defendant's Right to Retained Counsel of Choice Is Qualified and May Be Abridged for Compelling Reasons. ... 13

      C.    A District Court Must Articulate a Reasonable Basis for Denying a Petition for Admission *Pro Hac Vice*. ................. 15

VI.   Conclusion ....................................................................... 24

Certificate of Compliance

Certificate of Service

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alexander* v. *FBI*, 186 F.R.D. 197 (D.D.C. 1999)  ................................... 23

*Baldwin Hardware Corp.* v. *Franksu Enterprise Corp.*,
    78 F.3d 550 (Fed. Cir. 1996) .......................................... 7, 18, 19, 20

*Bauman* v. *U.S. District Court*, 557 F.2d 650 (9th Cir. 1977) ............... 13

*Bundy* v. *President Barack Obama et al.*, 2:16-cv-1047-JCM-GWF ..... 10

*Cheney* v. *U.S. District Court*, 542 U.S. 367 (2004) ............................... 12

*Christensen* v. *U.S. District Court*, 844 F.2d 694 (9th Cir. 1988)........... 13

*Forras* v. *Rauf*, No. 111970/2010,
    2012 WL 7986872 (N.Y. Sup. Ct. Sept. 26, 2012)  ........................ 22

*In re Evans*, 801 F.2d 703 (4th Cir. 1986)  ............................................ 22

*In re United States*, 791 F.3d 945 (9th Cir. 2015)  .............. 13, 15, 16, 23

*Judicial Watch of Florida, Inc.* v. *U.S. Dep't of Justice*,
    159 F. Supp. 2d 763 (D.D.C. 2001)  ............................................... 23

*Klayman* v. *Barmak*, No. 08-1005,
    2009 WL 4722803 (D.D.C. Dec. 4, 2009)  ...................................... 22

*MacDraw, Inc.* v. *CIT Group Equip. Fin., Inc.*,
    91-cv-5153 (S.D.N.Y. 1991) ............................................................. 7

*MacDraw, Inc.* v. *CIT Group Equipment Financing, Inc.*,
    138 F.3d 33 (2d Cir 1998).............................................................. 11

*MacDraw, Inc.* v. *CIT Group Equip. Fin., Inc.*,
   1994 U.S. Dist. LEXIS 363 (S.D.N.Y. Jan. 18, 1994) ............. 20, 21

*MacDraw, Inc.* v. *CIT Group Equip. Fin., Inc.*,
   138 F.3d 33 (2d Cir. 1998) .................................................... 21, 22

*MacDraw, Inc.* v. *CIT Group Equip. Fin., Inc.*,
   994 F. Supp. 447 (S.D.N.Y. 1997) ............................................ 21, 22

*Munoz* v. *Hauk*, 439 F.2d 1176 (9th Cir. 1971) (per curiam) ................ 13

*Panzardi–Alvarez* v. *United States*, 879 F.2d 975 (1st Cir. 1989) ........ 14

*United States* v. *D'Amore*, 56 F.3d 1202 (9th Cir. 1995) ................... 14, 15

*United States* v. *Collins*, 920 F.2d 619 (10th Cir. 1990) ........................ 15

*United States* v. *Garrett*, 179 F.3d 1143 (9th Cir. 1999) ........................ 14

*United States* v. *Lillie*, 989 F.2d 1054, 1056 (9th Cir. 1993) ........... 14, 15

*United States* v. *McClendon*, 782 F.2d 785 (9th Cir. 1986) ................... 15

*United States* v. *Ries*, 100 F.3d 1469 (9th Cir. 1996) ............... 14, 15, 23

*United States* v. *Walters*, 309 F.3d 589 (9th Cir. 2002) ......................... 13

## FEDERAL STATUTES

18 U.S.C. § 111(a), (b) ................................................................... 2

18 U.S.C. § 115(a)(1)(B) ................................................................ 2

18 U.S.C. § 371................................................................................. 2

18 U.S.C. § 372 .............................................................................. 2

18 U.S.C. § 924(c) ........................................................................ 2

18 U.S.C. § 1503 .......................................................................... 2

18 U.S.C. § 1951 .......................................................................... 2

18 U.S.C. § 1952 .......................................................................... 2

28 U.S.C. § 144 .......................................................................... 11

28 U.S.C. § 1915 ........................................................................ 20

28 U.S.C. § 1927 ........................................................................ 19

# I.    INTRODUCTION

This matter comes before the Court on a petition for a writ of mandamus filed by Defendant Cliven D. Bundy, who seeks an order from this Court directing the district court to grant attorney Larry Klayman's verified petition for permission to practice *pro hac vice* to represent Bundy in his pending criminal case.

Although the U.S. Attorney's Office respectfully declines to opine on the ultimate question whether Klayman should be allowed to represent him, the government files this response, as directed by this Court. In it, the government seeks to provide an overview of the relevant facts, and a summary of relevant case law, to assist the Court in making its determination whether the district court acted within its discretion in denying Klayman's petition.

The government notes that two federal district judges have permanently barred Klayman from appearing in their courtrooms, with the Second Circuit and Federal Circuit upholding those severe sanctions. In addition, several other federal courts have sanctioned Klayman for failing to comply with court orders, litigation misconduct, raising meritless claims, ignoring local rules, and making

1

misrepresentations to the court. Although it is unclear in the record below whether the district court relied on that history in denying Klayman's petition, this Court's precedent suggests a district court can take such history into account in exercising its discretion.

## II. ISSUE PRESENTED

**Whether the District Court Acted Within Its Discretion in Denying Klayman's Application for Admission *Pro Hac Vice*.**

## III. STATEMENT OF THE REVELANT FACTS

### A. The Court Denies Without Prejudice Klayman's Initial *Pro Hac Vice* Petition.

On March 2, 2016, a federal grand jury in the District of Nevada returned a sixteen-count superseding indictment charging Bundy and his codefendants with violations of 18 U.S.C. § 371 (Conspiracy to Commit an Offense Against the United States), § 372 (Conspiracy to Impede and Injure a Federal Officer), § 111 (a) and (b) (Assault on a Federal Officer); § 115(a)(1)(B) (Threat Against a Federal Officer); § 1503 (Obstruction of Justice); § 1951 (Interference with Interstate Commerce by Threat); § 1952 (Interstate Travel in Aid of Racketeering); and § 924(c) (use and carry a firearm in relation to a crime of violence).

2

CR 27. At an initial appearance on March 3, 2016, an assistant federal public defender appeared, noted that the attorney Bundy might be retaining was out of town, and requested a six-day continuance, which the court granted. CR 83.

On March 10, 2016, Las Vegas attorney Joel Hansen entered a notice of limited appearance to represent Bundy only at his initial appearance and arraignment because Bundy had "not yet made a final decision as to who should be his defense attorney or attorneys throughout the rest of the case." CR 106, 111. Bundy made his initial appearance, and the district court entered pleas of not guilty on Bundy's behalf after Bundy refused to enter a plea. CR 107.

On March 22, 2016, Hansen filed a petition for permission to practice *pro hac vice* on behalf of attorney Larry Klayman. CR 155; *see* CR 166 (corrected petition).[1] The District of Nevada's standard form for a verified petition to appear *pro hac vice* includes the following request for information:

---

[1] The district court issued an order March 23, 2016, noting that Klayman's petition, in violation of the court's local rules, was not signed by Bundy. CR 156. Hansen filed a corrected petition for Klayman the same day. CR 166.

5.    That there are or have been no disciplinary proceedings instituted against petitioner nor any suspension of any license, certificate or privilege to appear before any judicial, regulatory or administrative body, or any resignation or termination in order to avoid disciplinary or disbarment proceedings, except as described in detail below:

In the space provided, and in an accompanying statement, Klayman 1) acknowledged that he had agreed to a public reprimand before the Florida bar several years earlier, CR 155, at 7; 2) asserted there was a "disciplinary proceeding pending before the District of Columbia Board of Professional Responsibility" that alleged a conflict of interest based on his representation of a former "client, employee and donor" of an organization founded and once ran in litigation against that organization, and further asserted that the matter was "likely to be resolved in [his] favor" and that the current directors of the organization "feel competitive with [him] and attempted to harm [his] reputation, *ibid*.; and 3) asserted that, several years earlier, "two judges vindictively stated that [he] could not practice before them after [he] challenged rulings that they made on the basis of bias and prejudice," but that "the bars of the District of Columbia and Florida reviewed these rulings and found that [he] did not act unethically." *Id*. at 7–8.

On March 31, 2016, the district court issued an order denying
Klayman's petition without prejudice. The court concluded, among other
things, that Klayman's disclosure with respect to the disciplinary
proceeding pending before the District of Columbia Board of
Professional Responsibility was "misleading and incomplete." CR 215, at
2. It noted that, according to an Affidavit of Negotiated Disposition and
Petition for Negotiated Discipline received by the Board, both of which
Klayman signed, the proceedings involved three different cases and
contained three counts of violations. *Ibid*. The court further noted that
Klayman's signed Affidavit of Negotiated Disposition stated: "I affirm
that the stipulated facts in the accompanying petition and this affidavit
are true and support the stipulated misconduct and the agreed upon
sanction," *id*. at 2 (quoting *id*. at 5), and that Petition stated that the
"matter was resolved with an 'Agreed Upon Sanction' of a 'public
censure.'" *Ibid*. (quoting *id*. at 14). The court emphasized that "[t]hese
documents were not provided by counsel, and they are admissions of
three separate incidents of stipulated misconduct that were not clearly
disclosed in Klayman's Verified Petition." *Ibid*. The Court therefore
denied the petition without prejudice, stating as follows:

5

Should Klayman wish to file a new Verified Petition with the Court, the following information should be included: (1) the case numbers for the cases before Judge William D. Keller and Judge Denny Chin that resulted in these judges precluding Klayman's practice before them; (2) verification of the review by the Bar Associations of the District of Columbia and Florida finding that Klayman did not act unethically before Judges Keller and Chin; (3) an updated Certificate of Good Standing from the Supreme Court of Florida; 4) the Florida Bar Association's reprimand verifying that there was no showing of dishonesty in connection with their disciplinary action; (5) the Exhibits attached to this Order; and (6) verification that the matter in the District of Columbia disciplinary case referenced in the Verified Petition (Verified Pet. 7) has been resolved with no disciplinary action.

*Id.* at 2–3.

## B. The Court Denies Klayman's Request for Reconsideration.

On April 7, 2016, Hansen filed, on Klayman's behalf, a pleading styled as "Pro Hac Vice Petitioner's and Applicant's Compliance with Court Order of April 2, 2016 and Supplement to and Renewed Verified Petition for Permission to Practice in this Case Only by Attorney Not Admitted to the Bar of this Court and Designation of Local Counsel Previously Filed on March 22, 2016." CR 229. In it, Klayman contended that the district court "appears to have misunderstood the nature and current posture of the disciplinary proceeding underway" in the District

of Columbia. He said he had "attempted to resolve the matter by agreement," but "later thought the better of having signed the affidavit and agreeing to negotiated discipline since he feels strongly that he acted ethically at all times." *Id.* at 1–2. Klayman asserted that the affidavit was of "no force or effect" and that the disciplinary hearing is "on-going." *Id.* at 3. He included, as an attachment to the pleading, a copy of the post-hearing brief he filed with the Board. CR 229-1, at 2–71, Klayman contended he "is confident of ultimately prevailing." *Id.* at 2.

Klayman's pleading attached some of the information the court had directed be included in any new petition, including recent certificates of good standing from the Florida and District of Columbia bars, *see id.* at 94, 96; and the consent judgment from the Florida Bar's complaint against him, *id.* at 98–106. Klayman also provided the case numbers for the two federal cases that resulted in federal district judges precluding him from practicing before them, *MacDraw, Inc.* v. *CIT Group Equip. Fin., Inc.*, 91-cv-5153 (S.D.N.Y. 1991); and *Baldwin Hardware Corp.* v. *Franksu Enterprise Corp.*, 78 F.3d 550 (Fed. Cir. 1996), *id.* at 3; and, with respect to the latter, a letter from the Florida bar noting that it had investigated the matter and concluded that "the

instances of misconduct on the present record do not rise to the level of clear and convincing evidence of an ethical violation." *Id.* at 92.

In an order issued April 19, 2016, the district court noted that "Klayman failed to follow the Court's instruction to file a new Verified Petition," CR 272, at 1 n.1, but construed the pleading as a motion for reconsideration and, so construed, denied it. Noting that "Klayman admits that this ethical complaint is still pending in the District of Columbia, as the pending disciplinary matter has not been denied, dismissed, or withdrawn," *id.* at 2, the court found "no error with its prior ruling," and thus that "Klayman's Verified Petition shall remain denied without prejudice until such time as Klayman can provide proof that the ethical disciplinary proceeding in the District of Columbia has been resolved in his favor." *Ibid.*

## C. Other Relevant Actions in the District Court

On April 22, 2016, Bundy filed a "Bench Brief Concerning Legal Consequences of the Court's Denial of Right of Counsel and Forced Denial of Pursuant to Sixth Amendment of the Constitutional as well as Denial of his Rights of Due Process of Law under the Fifth Amendment," in which he alleged that the denial of Klayman's admission was

"non-meritorious." ECF No 306, at 1. In it, Bundy stated, among other things, that "Defense Counsel for Mr. Bundy will be filing a Motion to Disqualify Judge Navarro on the basis of extra judicial bias and prejudice, particularly given the unfounded and outrageous attacks on Mr. Bundy and his family by Senator Harry Reid and President Obama, the people behind the nomination and appointment of Judge Navarro," apparently reasoning that those facts warranted disqualification because, he said, "Harry Reid has called Cliven Bundy a domestic terrorist and suggested that he should be imprisoned for life," and "President Obama has openly mocked and attacked Defendant Bundy at a White House Correspondents' dinner." *Id.* at 2. The pleading also stated, without explanation, that Bundy was "being held in solitary confinement," and that "[a]n objection to the Magistrate's Detention Order is currently before Judge Navarro, which is an additional reason why she should be disqualified forthwith before further damage is done to Mr. Bundy and his family." *Id.* at 2–3.

On May 10, 2016, at a hearing on his appeal from the magistrate judge's detention order, Bundy served Chief Judge Navarro in open court with a "lawsuit" naming her, President Obama, Senator Harry Reid, and

Senator Reid's son Rory, as defendants. In that civil lawsuit, Bundy alleged a conspiracy in which members of the United States Government's different branches were conspiring against Bundy and his family. *See* 2:16-cv-1047-JCM-GWF, Dkt. # 1, at 5 (alleging that Senator Reid, acting "in concert" with President Obama and Rory Reid, used his position to have Bundy "prosecuted by the Obama administration in order to secure the land that was being negotiated for sale for profit and/or illegal kickback to HARRY REID and his son RORY, with the complicity of Defendant OBAMA"); *id*. at 7 (alleging that President Obama, acting "in concert" with Senator Reid and Rory Reid, "ordered Attorney General Loretta Lynch have Defendant BUNDY arrested at the Portland airport and charged and then indicted with 17 counts of criminal acts in Nevada"). The suit further alleged that Chief Judge Navarro is a "Latino [sic] activist," *id*. at 8; and that "[a]s a Latino [sic] Democrat woman, [Chief Judge] Navarro understood that she would be high on the list for a higher judicial appointment if she contributed as the sitting judge to have Defendant BUNDY denied right of counsel of

Klayman….” *Id*. at 12.[2] After serving Chief Judge Navarro with the civil complaint, Bundy informed her that, now that he was suing her, he expected her to recuse herself from presiding over his criminal case.

On May 20, 2016, Bundy filed a motion to disqualify Chief Judge Navarro under 28 U.S.C. § 144, on the grounds that 1) her husband is a prosecutor in the county in which the underlying events of the federal charges against Bundy occurred and state charges could potentially be brought, and 2) she was appointed by President Obama on the recommendation of Senator Reid.[3] CR 427. The government opposed the motion noting, among other things, that in *MacDraw, Inc.* v. *CIT Group*

---

[2]     On October 12, 2016, the district court approved the parties' stipulation and order dismissing with prejudice all claims against the defendants in the civil suit. *See* 2:16-cv-01047-JCM-GWF, Dkt. # 44.

[3]     The motion again alleged that Senator Reid and his son were trying to "steal the Bundy's [sic] land so that they can bundle it with other land and sell it for a huge profit to a Chinese company to build a solar power farm." CR 427, at 2. The motion also alleged, without explanation or citation, that Chief Judge Navarro "engaged in cruel and unusual punishment of political prisoners by ordering Bundy in to [sic] solitary confinement," *id*. at 3, and that Chief Judge Navarro "has received the instructions of [Senator] Reid and [President] Obama loud and clear and is carrying out those marching orders." *Id*. at 4–5. At a hearing ten days earlier, however, the district court made clear that it had entered no order directing that Bundy be held in solitary confinement, *see* CR 421, at 29, 30, and the prosecutor noted that he had been shown documents reflecting that Bundy had requested segregation. *Id*. at 51–52.

*Equipment Financing, Inc.*, 138 F.3d 33 (2d Cir 1998), the Second Circuit

upheld the district court's decision to sanction counsel (including

Klayman) for implying partiality merely based on the fact that the

current administration appointed the judge. CR 435. *Id.* at 9. The district

court denied the motion. CR 446.[4]

## IV.   MANDAMUS STANDARD OF REVIEW

To obtain a writ of mandamus (1) the petitioner must have no

other adequate means to obtain the relief it desires; (2) the petitioner's

right to the writ must be clear and indisputable; and (3) the writ must be

appropriate under the circumstances. *Cheney* v. *U.S. District Court for*

*District of Columbia*, 542 U.S. 367, 380-81 (2004). This Court considers

whether: (1) the party seeking the writ has no other means, such as a

direct appeal, of attaining the desired relief; (2) the petitioner will be

damaged in a way not correctable on appeal; (3) the district court's order

is clearly erroneous as a matter of law; (4) the order is an oft-repeated

error, or manifests a persistent disregard of the federal rules; and (5) the

---

[4]      Bundy filed a notice of appeal from that order, which was docketed
in this Court as 16-10303. This Court twice issued orders noting probable
lack of jurisdiction and directing Bundy to move for voluntary dismissal
or show cause why the appeal should not be dismissed. Bundy did not
respond to either order.

order raises new and important problems, or issues of law of first impression. *Bauman* v. *U.S. District Court*, 557 F.2d 650, 654-55 (9th Cir. 1977). Not every factor is relevant in every case, and the writ may issue even if some of the factors point in different directions. *Christensen* v. *U.S. District Court for Central District of California*, 844 F.2d 694, 697 (9th Cir. 1988).

## V. GOVERNMENT'S RESPONSE

### A. Standard of Review

This Court "normally review[s] a denial of a motion to appear *pro hac vice* for abuse of discretion," *In re United States*, 791 F.3d 945, 955 (9th Cir. 2015) (quoting *United States* v. *Walters*, 309 F.3d 589, 591 (9th Cir. 2002)), and therefore its "review of a decision to deny *pro hac vice* admission is especially deferential in a mandamus proceeding." *Ibid.* (citing *Munoz* v. *Hauk*, 439 F.2d 1176, 1179 (9th Cir. 1971) (per curiam)).

### B. A Defendant's Right to Retained Counsel of Choice Is Qualified and May Be Abridged for Compelling Reasons.

"A defendant's right to the counsel of his choice includes the right to have an out-of-state lawyer admitted *pro hac vice*." *United States* v.

13

*Walters*, 309 F.3d 589, 592 (9th Cir. 2002) (quoting *United States* v. *Lillie*, 989 F.2d 1054, 1056 (9th Cir. 1993) (citation omitted), overruled on other grounds by *United States v. Garrett*, 179 F.3d 1143 (9th Cir. 1999)). "[A] decision denying a *pro hac vice* admission necessarily implicates constitutional concerns." *Ibid.* (quoting *Panzardi–Alvarez* v. *United States*, 879 F.2d 975, 980 (1st Cir. 1989) (citation omitted).

This Court recognizes, however, that a defendant's constitutional right to his retained counsel of choice is "a qualified constitutional right" that "may be abridged to serve some 'compelling purpose.'" *Ibid.* (quoting *United States* v. *D'Amore*, 56 F.3d 1202, 1204 (9th Cir. 1995), overruled on other grounds by *United States* v. *Garrett*, 179 F.3d 1143 (9th Cir. 1999)). "Ensuring the ethical and orderly administration of justice is one such purpose." *United States* v. *Ries*, 100 F.3d 1469, 1471 (9th Cir. 1996) (citing *Lillie*, 989 F.2d at 1056; *Panzardi–Alvarez*, 879 F.2d at 980).

In deciding whether to grant a *pro hoc vice* application, the district court may take into account that "counsel from other jurisdictions may be significantly more difficult to reach or discipline than local counsel." *Ibid*. Thus, where "an of out-of-state attorney strongly suggests through his behavior that he will neither abide by the court's rules and

14

practices—thus impeding the 'orderly administration of justice'—nor be readily answerable to the court, the judge may, consistent with the 'compelling purpose' standard of *D'Amore*, 56 F.3d at 1204, reject his *pro hac vice* application. *Ibid.*; *cf. Lillie*, 989 F.2d at 1056 (district court may refuse to allow substitution of counsel based on "new counsel's ethical unfitness" (citing *United States* v. *Collins*, 920 F.2d 619, 626 (10th Cir. 1990)). "A district court would clearly act within its discretion in denying *pro hac vice* admission if, for example, an attorney's actions led the court to conclude the attorney would not 'abide by the court's rules and practices' or 'be readily answerable to the court.'" *In re United States*, 791 F.3d at 957 (quoting *Ries*, 100 F.3d at 1471).

## C.  A District Court Must Articulate a Reasonable Basis for Denying a Petition for Admission *Pro Hac Vice*.

Before the district court can engage in a measured exercise of discretion, it must conduct an inquiry adequate to create a "sufficient basis for reaching an informed decision." *D'Amore*, 56 F.3d at 1205 (quoting *United States* v. *McClendon*, 782 F.2d 785, 789 (9th Cir. 1986)). "[I]f a court has ethical doubts about an attorney who is in good standing with a state bar, it must articulate some reasonable basis for those

doubts before denying the attorney's application for *pro hac vice* admission. *In re United States*, 791 F.3d at 957.

In its order denying Klayman's initial petition, the district court found his disclosure of the pending disciplinary case in the District of Columbia "misleading and incomplete." CR 215, at 2. The court had, apparently independently, found an Affidavit of Negotiated Disposition and a Petition for Negotiated Discipline, both signed by Klayman, that had been received by the District of Columbia Court of Appeals Board on Professional Responsibility on June 23, 2014. *Id.* at 2; *see id.* at 5–22. The Court noted that the documents constituted "admissions of three separate incidents of stipulated misconduct that were not clearly disclosed in Klayman's Verified Petition." *Id.* at 2. The court therefore denied Klayman's petition without prejudice, and gave Klayman specific instructions regarding how to file a new petition. *Ibid.*

Rather than following the court's instructions, Klayman filed a pleading—styled as a "Pro Hac Vice Petitioner's and Applicant's Compliance with Court Order of April 2, 2016 and Supplement to and Renewed Verified Petition for Permission to Practice in this Case Only by Attorney Not Admitted to the Bar of this Court and Designation of

16

Local Counsel Previously Filed on March 22, 2016"—which the district court reasonably construed as a motion for reconsideration. *See* CR 229, 272.

Klayman's pleading suggested that the affidavit and petition had been either withdrawn or rejected, *see* CR 229, at 2 ("Importantly, Rule 17.10 of the District of Columbia Board of Professional Responsibility (Exhibit 10) provides that a previously entered into negotiated discipline is of no force or effect if it is rejected or withdrawn."); and clearly implied it had been withdrawn, *see id*. at 1–2 ("Bar Counsel and Mr. Klayman had attempted to resolve the matter by agreement, but Mr. Klayman later thought the better of having signed the affidavit and agreeing to negotiated discipline since he feels strongly that he acted ethically at all times."). The pleading did not, however, affirmatively assert which, if either, of those actions had occurred. He attached a "Post-Hearing Brief," which appears to acknowledge that the committee investigating the matter had made a preliminary determination that Bar Counsel proved the alleged violations by clear and convincing evidence, *see* CR 229-1, at 10, but did not note that preliminary determination in the pleading itself, stating only that he is "confident of ultimately

17

prevailing." CR 229, at 2. The court construed Klayman's pleading as a motion for reconsideration, and denied it, finding no error with its prior ruling.

The district court had directed that, if Klayman filed a new petition, he should include citations to the two cases in which federal district judges barred him from appearing in their courtrooms. The court did not discuss those cases in its order, likely because it was construing the later pleading only as a motion for reconsideration. Nevertheless, Klayman did provide that information, and thus the court presumably was aware of those cases. A review of those cases reveals adverse findings against Klayman by both federal district courts and circuit courts.

In *Baldwin Hardware Corp. v. Franksu Enterprise Corp.*, 78 F.3d 550 (Fed. Cir. 1996), the Federal Circuit affirmed the order of the trial court in the Central District of California imposing sanctions against Klayman, including an order permanently prohibiting him from appearing *pro hac vice* before the trial judge in any future litigation. 78 F.3d at 554. The Federal Circuit recounted that "[o]ver the course of the trial, Judge Keller admonished Mr. Klayman several times concerning

his conduct of the proceedings" and that "[a]dditionally, Judge Keller

expressed increasing frustration with Mr. Klayman's practice of

continuing to speak after the trial judge requested silence." 78 F.3d at

555:

> Following the close of trial, Judge Keller *sua sponte*
> ordered Mr. Klayman permanently and prospectively barred
> from appearing before Judge Keller *pro hac vice* in any future
> litigation. Judge Keller cited several actions by Mr. Klayman
> during the trial as grounds for the order. Additionally, Judge
> Keller sanctioned K & A [Klayman's firm] under 28 U.S.C. §
> 1927 for "unreasonably and vexatiously multiplying the
> proceedings" and awarded Baldwin attorney fees and
> expenses incurred with respect to various aspects of the trial.
> Judge Keller incorporated the sanctions orders into his final
> judgment in the case.

78 F.3d at 555; *see also id*. at 554 ("Pretrial proceedings, particularly

discovery proceedings . . . were marked by [Klayman's] delays in

complying, or failure to comply, with the court's rules and orders.").

On appeal, the Federal Circuit noted that the trial court's order

"[made] clear that the trial judge considered Mr. Klayman to have acted

in bad faith, in particular by making certain misrepresentations to the

Court." *Id*. at 562 (citing, as one example, Klayman's representation that

he had never been sanctioned, although his former firm had in fact been

sanctioned in a matter that Klayman and two other attorneys had

19

handled). Finally, even as it denied the appellee's request for fees and costs associated with the appeal, the Federal Circuit noted that Klayman's misconduct had continued on appeal. *Id.* at 563 ("Throughout this appeal, appellants have taken considerable liberties with the record and mischaracterized statements therein; peppered the court with motions seeking a free transcript that do not acknowledge or comply with the standards for *in forma pauperis* treatment under 28 U.S.C. § 1915; failed to file a timely Reply Brief despite an extension and then attempted to insert their arguments on reply in their transcript access motions; and, most deplorably, launched a charge of financial bias and conflict of interest against a district judge while utterly failing to mention, much less address, the provisions of law governing that serious allegation.").

The Second Circuit expressed similar dismay at Klayman's conduct in affirming sanctions against him in the other case he provided to the district court. The first time the trial court sanctioned Klayman in *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, it noted that it was "deeply troubled" by meritless claims Klayman had pursued; *inter alia*, it was "apparent that [Klayman] engaged in little or no preliminary factual

and legal investigation before bringing [a motion for partial summary judgment]." 1994 U.S. Dist. LEXIS 363, at **61–62 (S.D.N.Y. Jan. 18, 1994). The Second Circuit vacated the sanctions, but only because the trial court's "identification of [the sanctionable conduct] was not sufficiently specific." *MacDraw, Inc.* v. *CIT Group Equip. Fin., Inc.*, 138 F.3d 33, 35 (2d Cir. 1998). The Second Circuit "specifically did not hold that Klayman's conduct was not sanctionable," *id.*, and noted its "sympathy with the district court's frustration."

When the case returned to a new judge in the trial court, Klayman's improper behavior continued. *See* 994 F. Supp. 447 (S.D.N.Y. 1997)*, aff'd*, 138 F.3d 33 (2d Cir. 1998). In addition to "questionable lawyering, the taking of specious positions, and the wasting of resources of the parties and the Court," *id.* at 457, Klayman now accused the court of bias based on the judge's race, purported to advise the court on the canons of judicial ethics, and told the court to "search [its] soul." *Id.* at 448. Further, rather than apologizing for such behavior, Klayman "resorted to mischaracterizing and misrepresenting the record in an effort to justify [his and his co-counsel's] actions." *Id.* at 459. The court found, "by clear and convincing evidence, that [Mr. Klayman and his

21

co-counsel], and in particular Mr. Klayman, engaged in undignified and discourteous conduct that was both degrading to the Court and prejudicial to the administration of justice." *Id.* at 455. As a sanction, the court revoked Klayman's *pro hac vice* admission and prospectively barred Klayman from appearing in that judge's court again. *Id.* at 460. The court further required Klayman to attach a copy of that sanctions order to any future application for *pro hac vice* admission in the Southern District of New York. *Id.* The Second Circuit affirmed those sanctions, observing that an attorney had even been disbarred for similar conduct. 138 F.3d at 38 (citing *In re Evans*, 801 F.2d 703, 704–06 (4th Cir. 1986) (affirming sanction of disbarment)).

Finally, given that the district court apparently on its own found the affidavit and petition submitted to the District of Columbia Board of Professional Responsibility, it is likely the court was also aware of several other publicly available judicial decisions sanctioning Klayman for bad conduct. *See, e.g.*, *Forras* v. *Rauf*, No. 111970/2010, 2012 WL 7986872 (N.Y. Sup. Ct. Sept. 26, 2012) (sanctioning Klayman for unexplained failure to appear at oral argument); *Klayman* v. *Barmak*, No. 08-1005, 2009 WL 4722803 (D.D.C. Dec. 4, 2009) (sanctioning

Klayman for discovery misconduct); *Judicial Watch of Florida, Inc.* v. *U.S. Dep't of Justice*, 159 F. Supp. 2d 763, 764 (D.D.C. 2001) (observing that Klayman's sanctionable conduct "appears to the Court to have been done quite deliberately, and probably with some malicious glee"); *Alexander* v. *FBI*, 186 F.R.D. 197, 199 (D.D.C. 1999) (noting Klayman's repeated disregard of the Local Rules of this Court, observing that Klayman "apparently misread (or never read)" the applicable Local Rule, and sanctioning Klayman for misrepresentations to the Court and opposing counsel). To the extent the district court took these and other prior sanctions into account, this Court's precedent appears to support its decisions to do so. *See*, *e.g.*, *In re United States*, 791 F.3d at 957 ("A district court would clearly act within its discretion in denying *pro hac vice* admission if, for example, an attorney's actions led the court to conclude the attorney would not 'abide by the court's rules and practices' …") (quoting *Ries*, 100 F.3d at 1471).

## VI.   CONCLUSION

The government provides the above information for the Court's consideration in determining whether the district court acted within its discretion in denying Klayman's petition to appear *pro hac vice*.

DATED this 14th day of October, 2016.

Respectfully submitted,

DANIEL G. BOGDEN
United States Attorney

*s/ Elizabeth O. White*
ELIZABETH O. WHITE
Appellate Chief and
Assistant United States Attorney
District of Nevada
100 W. Liberty, Suite 600
Reno, Nevada 89501
(775) 784-5438
*Attorneys for Plaintiff-Real Party in Interest*

24

# CERTIFICATE OF COMPLIANCE PURSUANT TO
# FED. R. APP. P. 32(a)(7)(C) AND CIRCUIT RULE 32-1

I certify that:

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached response is proportionately spaced, has a typeface of 14 points or more and contains 4,891 words in 24 pages.

DANIEL G. BOGDEN
United States Attorney

_s/ Elizabeth O. White_
ELIZABETH O. WHITE
Appellate Chief and
Assistant United States Attorney

Dated: October 14, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2016, I electronically filed the foregoing Response from the United States (Plaintiff—Real Party in Interest) with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system:

*s/ Elizabeth O. White*
ELIZABETH O. WHITE
Appellate Chief and
Assistant United States Attorney